IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 23, 2014

## STATE OF TENNESSEE v. TROY JAMES KEITH REYNOLDS

**Appeal from the Circuit Court for Blount County**
**Nos. C-21263, C-21264      Tammy Harrington, Judge**

**No. E2013-02777-CCA-R3-CD - Filed September 2, 2014**

The defendant, Troy James Keith Reynolds, appeals his Blount County Circuit Court jury convictions of burglary, theft, and possession of burglary tools, claiming that the evidence was insufficient to support his convictions. Because the judgment in count two erroneously reflects a conviction of Class C felony theft, we remand that judgment to the trial court for entry of a corrected judgment reflecting a conviction of Class D felony theft. In addition, we remand for correction of other clerical errors in the judgments. In all other respects, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed; Remanded**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which ROBERT W. WEDEMEYER, J., and JOE H. WALKER, III, SP. J., joined.

J. Liddell Kirk, Knoxville, Tennessee (on appeal); and Mack Garner, Maryville, Tennessee (at trial), for the appellant, Troy James Keith Reynolds.

Robert E. Cooper, Jr., Attorney General and Reporter; Tracy L. Alcock, Assistant Attorney General; Michael L. Flynn, District Attorney General; and Matthew Dunn, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On December 3, 2012, the Blount County grand jury charged the defendant with three counts of burglary; one count of theft of property valued at $10,000 or more but less than $60,000; one count of theft of property valued at $500 or more but less than $1,000; one count of theft of property valued at $1,000 or more but less than $10,000; and one count of possession of burglary tools. The trial court conducted a jury trial in June 2013.

At trial, Chad Larrance testified that, in August 2012, he was in the process of moving into a residence at 2843 Old Whites Mill Road in Maryville. On August 9, 2012, Mr. Larrance contacted the police to report that someone had broken into the three storage containers located behind the residence. Mr. Larrance explained that the containers were large steel shipping containers and that he had been using them to store "pretty much everything we owned." Mr. Larrance observed that the latches to the storage containers had been cut, and both the padlocks and pieces of the doors were lying on the ground. Mr. Larrance testified that all three storage containers were "completely full" and that it appeared that the intruder had gone "through every single box and everything we had, they had went through the whole thing and pretty much destroyed everything in them."

Shortly after the burglary, Mr. Larrance visited a local flea market and discovered his missing chainsaw. He recognized the chainsaw based on a piece of fabric he kept in the chainsaw case to soak up excess oil along with "a couple of spare chains" that he kept in the case. Mr. Larrance testified that the chainsaw, along with a Kawasaki motorbike or "mini" bike, a component piece of a Kobalt "air die grinder set," and other items were recovered; those items were worth approximately $3,225. Numerous other items, valued at around $5,000, were never recovered. Mr. Larrance listed over 40 items that had been stolen from the storage containers, including a variety of tools and machines and a number of handbags.

Mr. Larrance testified that he did not know the defendant, that he had never seen him prior to August 2012, and that he would not have given consent for the defendant to enter his property and take any items.

On cross-examination, Mr. Larrance explained that two of the storage containers were 40 feet long and eight feet wide, and one of the containers was only 20 feet long and eight feet wide. Mr. Larrance estimated that he had "a couple of hundred" boxes inside the storage containers. Mr. Larrance opined that more than one person had been involved in the burglary and theft because it would have been difficult for one person to remove so many items from the containers without assistance. Mr. Larrance conceded that he had not yet moved into the house on Whites Mill Road and that he did not see the storage containers on a daily basis. Mr. Larrance testified that, on August 9, he observed that the fence around his property had been cut, and he saw tire tracks in the grass where the perpetrator "had spun out" when leaving the property. Mr. Larrance also noticed "a pretty well-beaten path from the area where the truck was parked all the way up to the containers," and he observed pieces of tools along the path from the storage containers to the fence.

On redirect examination, Mr. Larrance testified that he had researched the measurements of the tire tracks he had observed and determined that the wheel base was

consistent with "a smaller size truck like a Ford Ranger, Chevy S-10, Nissan, Toyota size pickup."

Carey Knight, an employee of the Knox County Juvenile Justice Center, testified that she resided at 2832 Old Whites Mill Road and that she lived next door to Michael Stevens and down the road from Mr. Larrance. In August 2012, Ms. Knight was contacted by law enforcement officers who informed her that officers had located a chainsaw that belonged to her and her husband. Following this telephone call, Ms. Knight checked the barn and shed on her property and discovered that the locks on both buildings had been cut. Ms. Knight testified that the intruder had stolen a weed-eater, a blower, a chainsaw, totes containing Christmas items and art supplies, and Ms. Knight's tactical box containing a bullet-proof vest, gun belts, souvenirs from her employment at Mayport Naval Station, and other law enforcement items. Ms. Knight estimated that the value of the stolen items totaled "at least $2,000, if not more." Ms. Knight testified that neither she nor her husband knew the defendant and that they never gave him consent to enter their property and remove any items.

On cross-examination, Ms. Knight testified that law enforcement officers contacted her about the stolen chainsaw on a Saturday morning in August and that her husband had been in both the barn and shed on the prior Tuesday.

Michael Stevens testified that he resided at 2830 Old Whites Mill Road and that, in August 2012, Ms. Knight contacted him to inform him of the break-in on her property. Mr. Stevens then examined a shed located behind his home and determined that the lock hasp had been cut. Mr. Stevens testified that the intruder had stolen two nailers, three saws, a drill kit, and a can of gasoline. Mr. Stevens recovered everything except the can of gasoline, and he estimated that the total value of the items stolen was "close to $1,000." Mr. Stevens did not know the defendant and never gave him permission to enter or remove items from his property.

On cross-examination, Mr. Stevens confirmed that Ms. Knight had contacted him about the break-in on a Saturday morning in August. Because Mr. Stevens used the shed on his property to store work tools, he estimated that he had last been inside the shed "a day or two" before that Saturday.

Darrell Morris testified that he knew the defendant, explaining that the defendant had been his next-door neighbor several years before trial. Mr. Morris testified that he was in the business of raising and selling chickens at a local flea market; Mr. Morris sold "odds and ends" at the flea market as well. On August 11, Mr. Morris was operating his booth at the flea market when law enforcement officers arrived and informed him that

some of his merchandise might be stolen goods. Mr. Morris explained that he had purchased the items, which primarily consisted of tools and small machines, from the defendant at a location in Blount County. Mr. Morris testified that he had paid "[a]round $425 or $450" for all of the items.

Mr. Morris acknowledged his "lengthy criminal history" and conceded that he was currently on probation for manufacturing methamphetamine. Mr. Morris, however, denied stealing any of the property found at the flea market.

On cross-examination, Mr. Morris stated that he had purchased the items from the defendant "three days or more" before the police informed him that the items might have been stolen. Mr. Morris agreed that if he had suspected that the items he purchased had been stolen, he would "have had nothing to do with" their purchase.

Detective Sara Wilson with the Blount County Sheriff's Office testified that she was assigned to Mr. Larrance's case in August 2012. On August 11, Mr. Larrance contacted Detective Wilson and informed her that he believed he had located some of his stolen property at a local flea market. When Detective Wilson and Detective Davis arrived at the flea market, they discovered several items belonging to Mr. Larrance as well as Ms. Knight's chainsaw. Detective Wilson took a statement from Mr. Morris and confiscated the stolen items. On the following day, Mr. Morris contacted Detective Davis and informed him that the defendant had contacted him regarding other items he wished to sell. The detectives arranged for Mr. Morris to place a recorded telephone call to the defendant, monitored by Detectives Wilson and Davis and Deputy Joe McCarter. The recording of the telephone conversation was admitted into evidence and played for the jury. During the conversation, the defendant tells Mr. Morris that he had "done sold most of that sh** that I had" for "a f***ing $100 dollars." When Mr. Morris inquired as to what the defendant had sold for that amount, the defendant responded "[t]hose two nailers, a screwdriver set, and that . . . f***in' leaf blower." The defendant also stated that he had already sold "a dirt bike" and that the only things he still had in his possession were a "miter saw" and a "drill set." Mr. Morris mentioned that he would be interested in purchasing those two items and made arrangements to meet the defendant later that day at Brown's Creek.

Detective Wilson later located the defendant in the Brown's Creek area sitting in the passenger seat of a vehicle driven by the defendant's girlfriend, Jeannie Harrison, and registered to the defendant's brother, Jake Reynolds. Detective Wilson stopped the vehicle and placed the defendant under arrest. Detective Wilson also located, in the back of the vehicle, a miter saw, a chainsaw, a table saw, a drill set, a vacuum service pump, and a set of bolt cutters; with the exception of the bolt cutters, all of the recovered property belonged to and was returned to Mr. Larrance and Mr. Stevens. Detective Wilson testified that bolt

cutters can be used to cut metal locks and gain entry into buildings. Items recovered from the flea market were returned to Mr. Larrance, Ms. Knight, and Mr. Stevens. Following the defendant's arrest, officers located at the residence of Ms. Harrison's mother stolen property, which included a pressure washer, a mini bike, and "a couple of weed-eaters," all of which belonged to Mr. Larrance. At 105 Bishop Street in Alcoa, officers recovered two floor nailers and a leaf blower, and that property was returned to Mr. Stevens and Ms. Knight, respectively.

Detective Wilson interviewed the defendant on August 13, 2012. Through Detective Wilson, the State introduced into evidence an audio recording of the defendant's interview, in which the following exchange occurred:

Det. Wilson: Alright so now that you know this is about White's Mill, so what do you want to say about it?

Defendant: Y'all already got me with it, don't ya?

Det. Wilson: Uh huh.

Defendant: I mean, there ain't really nothing to say.

Det. Wilson: You're just saying one place?

Defendant: Huh?

Det. Wilson: One place?

Defendant: Yeah.

Det. Wilson: Uh huh.

Defendant: That's the only place I been in White's Mill.

Det. Wilson: No it ain't.

Defendant: I promise ya it is.

Det. Wilson: Why do I have property from another location at White's Mill?

-5-

Defendant:     You shouldn't have, it should all be from the same place.

Det. Wilson:   Two different locations actually.

Defendant:     Should all be from the same place.

Det. Wilson:   So where'd all that stuff come from?

Defendant:     What the stuff in the back of my truck?

Det. Wilson:   Uh huh.

Defendant:     Some of it's mine, I bought it.  I actually did buy it at the flea market.  See I do buy and sell stuff but some of the stuff I got from that one, just that one place on White's Mill.

Det. Wilson:   What place is that?

Defendant:     The one that y'all done charged me with.  I mean if there's anything else I don't know where it came from, cause that's the only place I been.

Det. Wilson:   What about the lawn mower?

Defendant:     Lawn mower?

Det. Wilson:   Uh huh.

Defendant:     What lawn mower?

Det. Wilson:   There's another lawn mower.  Alright.

Defendant:     What kind of lawn mower?

Det. Wilson:   Who was with you?

Defendant:     Nobody.

Det. Wilson: You got every bit of that stuff by yourself?

Defendant: Yeah.

Detective Wilson clarified that when she asked the defendant about "the one place," she was referring to Mr. Larrance's property.

With this evidence, the State rested its case. Following the trial court's denial of the defendant's motion for judgments of acquittal and a *Momon* colloquy, the defendant chose not to testify or offer any proof. Prior to closing arguments, the trial court entered an order amending count two of the indictment to reflect a charge of theft of Mr. Larrance's property valued at $1,000 or more than but less than $10,000.

Based on this evidence, the jury convicted the defendant as charged of the burglaries of the Larrance property, the Stevens property, and the Knight property; theft of property owned by Mr. Larrance valued at $1,000 or more but less than $10,000; theft of property owned by Mr. Stevens valued at $500 or more but less than $1,000; theft of property owned by the Knights valued at $1,000 or more but less than $10,000; and possession of burglary tools. Following a sentencing hearing, the trial court sentenced the defendant as a multiple offender to a term of eight years for each of the burglary convictions and the convictions for theft of property valued at $1,000 or more, and to a term of four years for the conviction for theft of property valued at $500 or more. The trial court further ordered the six sentences to be served concurrently to one another but consecutively to the defendant's sentences in four other Blount County Circuit Court cases, for a total effective sentence in this case of eight years. With respect to the defendant's misdemeanor conviction for possession of burglary tools, the trial court sentenced the defendant to 11 months and 29 days in the county jail, with pretrial jail credit from September 18, 2012 through November 21, 2013.

Following the denial of his timely but unsuccessful motion for new trial, the defendant filed a timely notice of appeal. In this appeal, the defendant contends that the evidence is insufficient to support his convictions, arguing specifically that the State failed to prove his identity as the perpetrator. We disagree.

We review the defendant's claim of insufficient evidence mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a

combination of direct and circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id.* Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

As charged in this case, "[a] person commits burglary who, without the effective consent of the property owner . . . [e]nters a building other than a habitation (or any portion thereof) not open to the public, with intent to commit a . . . theft." T.C.A. § 39-14-402(a)(1). "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103. A person is guilty of possession of burglary tools "who possesses any tool, machine or implement with intent to use the same . . . to commit any burglary." T.C.A. § 39-14-701.

Here, the proof adduced at trial established that storage buildings on three pieces of property in close proximity on Old Whites Mill Road had been burglarized during the early part of August 2012. The locks or the latches on each of the buildings and containers had been cut. From Mr. Larrance's storage containers, the burglar stole dozens of items worth over $8,000, including a chainsaw, a motorbike, and a component piece of an air die grinder set. The burglar stole from the Knights' property at least $2,000 worth of items, including a weed-eater, a leaf blower, and a chainsaw, and from Mr. Stevens, the burglar stole two nailers, three saws, a drill kit, and a can of gasoline, all of which was worth nearly $1,000. Following Mr. Larrance's discovery of his chainsaw at a local flea market on August 12, law enforcement officers questioned the proprietor of the flea market booth, Mr. Morris, and learned that he had acquired several tools and small machines from the defendant at least three days prior. Officers located items that had been stolen from Mr. Larrance, the Knights, and Mr. Stevens at the flea market and returned those items to their owners. During a recorded telephone conversation between Mr. Morris and the defendant, the defendant stated that he had sold two nailers, a leaf blower, and a dirt bike, but he mentioned that he still had a miter saw and a drill set available for purchase, and he arranged to meet Mr. Morris so that Mr. Morris could purchase the remaining items. When officers arrived at the appointed meeting spot, they confiscated from the defendant's brother's truck a miter saw, a chainsaw, a table saw, a drill set, a vacuum service pump, and a set of bolt cutters; all but the bolt cutters belonged to either Mr. Larrance or Mr. Stevens. After the defendant was

arrested, officers recovered other stolen property, which included a pressure washer, a motorbike, weed-eaters, two nailers, and a leaf blower, at two additional locations, one of which was the residence of the defendant's girlfriend's mother, and that property was returned to either Mr. Larrance, Ms. Knight, or Mr. Stevens. During the defendant's post-arrest interview with Detective Wilson, the defendant admitted being on "White's Mill" and acknowledged taking property from "the same place," which Detective Wilson clarified at trial referred to the Larrance property. Although the defendant, during his interview, denied stealing from any other properties, "[i]t is the jury's province, as the trier of fact, to determine which parts of the testimony and evidence to credit, and there is no requirement that a jury must wholly accept or reject a witness's account of events." *State v. Gene Shelton Rucker, Jr.*, No. E2002-02101-CCA-R3-CD, slip op. at 6 (Tenn. Crim. App., Knoxville, Dec. 9, 2004) (citing *State v. Bolin*, 922 S.W.2d 870, 876 (Tenn. 1996)). Detective Wilson also testified that bolt cutters can be used to cut metal locks and gain entry into buildings or facilities.

Affording the State the strongest legitimate view of the evidence and deferring to the credibility determinations made by the jury, we conclude that the evidence strongly supports the defendant's convictions of burglary, theft, and possession of burglary tools.

We detect, however, errors that require correction on the judgments in counts two and three. First, and most importantly, the judgment for count two indicates that the defendant was indicted for and convicted of theft of property valued at $10,000 or more, which is a Class C felony. The trial court entered an order prior to closing arguments at trial amending the indictment on count two to reflect a charge of theft of property valued at $1,000 or more but less than $10,000, and the jury verdict form states that, in count two, the defendant is guilty of theft of property valued at $1,000 or more but less than $10,000. As such, the error in the judgment form is clearly clerical in nature. In consequence, we remand the case to the trial court for entry of a corrected judgment reflecting the trial court's amendment of the charged offense and conviction offense of theft of property valued at $1,000 or more but less than $10,000, a Class D felony.

In addition, the judgment in count two should be corrected to reflect that the sentence for that conviction is to be served concurrently with counts one, three, four, five, and *six*; reference to count six was omitted from the original judgment. Finally, the judgment in count three contains no indication of release eligibility percentage. Because the defendant was found to be a multiple offender, this judgment should be corrected to indicate a release eligibility percentage of 35 percent, in keeping with the other felony judgments in this case.

Accordingly, we affirm the convictions and sentences but remand the case for entry of corrected judgments in counts two and three as outlined in this opinion.

_____
JAMES CURWOOD WITT, JR., JUDGE